223 N.J. Super. 274 (1987)
538 A.2d 465
FAIRKEN ASSOCIATES, PLAINTIFF,
v.
CURTIS HUTCHIN, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County, Special Civil Part.
Decided December 18, 1987.
*276 Craig Weinstein (Lowen & Abut, P.A.), for plaintiff.
No one appeared for defendant, who was in default.
FAST, J.S.C.
This is an action for possession following the conversion of the subject unit to the condominium form of ownership. This case presents two issues, both of which appear not to have been reported in any New Jersey case.
The issues presented are:
1) Whether comparable housing must be offered when a tenant does not request it, and
2) Assuming that no such offer is required, did the landlord waive the benefit of having served the tenant with the three year notice by collecting rent for two years following the effective date of that three year notice, or is the landlord subject otherwise to the defenses of estoppel or laches?
The plaintiff here was the sponsor of the conversion, and the defendant had been a tenant at the time of the conversion, sometimes referred to as a "pre-conversion tenant."
N.J.S.A. 2A:18-61.11a provides:
a. Tenants receiving notice under section 3 g. of P.L. 1974, c. 49 [N.J.S.A. 2A:18-61.2] may request of the landlord within 18 full months after receipt of such notice, and the landlord shall offer to the tenant, ... the rental of comparable housing or park site and a reasonable opportunity to examine and rent such comparable housing or park site. In any proceeding under subsection 2 k. of P.L. 1974, c. 49 [N.J.S.A. 2A:18-61.1] instituted following the expiration of notice required under section 3 g. of P.L. 1974, c. 49, the owner shall prove that a tenant was offered such comparable housing or park site and provided such reasonable opportunity to examine and rent such housing or park site as requested pursuant to this section. ... [Emphasis added]
I have found that the three year notice required by N.J.S.A. 2A:18-61.2 was given on November 1, 1982. It was effective three years later, to wit, November 1, 1985. That notice included the right of the tenant to request the comparable housing. I also have found in this case that the tenant did not request comparable housing, and that no comparable housing was offered to the tenant.
*277 Additional material facts are that the tenant has received notices to increase his rent, and that the rent has been paid to date.

ISSUE I

MUST COMPARABLE HOUSING BE OFFERED WHEN THE TENANT DOES NOT REQUEST IT?
The quoted statutory section uses the mandatory word "shall" ["and the landlord shall offer to the tenant"]. This issue requires the interpretation of the statutory mandate "shall."
The presumption that the word "shall" is imperative rather than directory, Furlong v. Manning, 212 N.J. Super. 240, 244 (Law Div. 1986) is not conclusive. Id. at 245. However, more significantly, "... it is important to remember that `often the surest path to misconstruction is a literal reading of a statute.' Henry v. Shopper's World, 200 N.J. Super. 14, 18 (App.Div. 1985)." Johns-Manville Prods. Corp. v. Dronebarger, 211 N.J. Super. 520, 525 (Law Div. 1986). The spirit and policy of the statute must control. Caputo v. The Best Foods, 17 N.J. 259, 264 (1955). Therefore, the word "shall" can be neither unduly emphasized nor given more life than intended.
If the word "shall" is construed to be mandatory in the absence of a request by the tenant (as authorized in that same statutory section, vide supra), then there is no reason for the legislature to have included the authorization to the tenant to make the request. That is, the landlord would have to have made the offer of comparable housing without any request by the tenant, anyway. This construction would make a significant provision by the legislature surplusage. Specifically, the introduction of the paragraph relates to the request that the tenant may make. Although statutory interpretation may require the deletion of words where necessary to effectuate the legislative intention, County of Monmouth v. Wissell, 68 N.J. *278 35, 43 (1975), an inference of surplusage in a legislative enactment should not be readily entertained. Foy v. Dayko, 82 N.J. Super. 8, 13 (App.Div. 1964).
I emphasize the significance of the authorization for the tenant's request, because I find that it is not surplusage. The main reason for this finding is that the tenant's authorization is limited, in that same introductory clause in the statute, to an 18-month period after the notice is served by the landlord. Clearly, since the legislature imposed a time limitation to a right, it did not consider the right to have been surplusage.
This interpretation is supported by the portion of the statute emphasized above, to wit, that the comparable housing "requested pursuant to this section" has in fact been offered to the tenant. In other words, the interpretation favorable to the tenant (i.e., that comparable housing must be offered even when not requested) would require finding that two clauses in the same statutory paragraph were surplusage. Neither was; the landlord need not make the offer without the timely request by the tenant (assuming that the statutorily required notice to the tenant has been given.) In fact, since no offer of comparable housing would have to be made if requested by the tenant more than 18 months after receipt of the notice, I perceive no rationale for requiring an offer of comparable housing where none is requested at any time.
The rules and regulations promulgated by the Department of Community Affairs, see N.J.S.A. 2A:18-61.12, designed to implement the statute, do not suggest otherwise. The regulation, N.J.A.C. 5:24-1.6(a) states:
(a) Tenants in occupancy prior to the recording of the master deed ... who have received the three year notice of eviction on the grounds of conversion have the right, for 18 full months after the receipt of such notice, to request of the landlord, and to be offered by the landlord ... a reasonable opportunity to examine and rent `comparable housing'. [Emphasis added]
Therefore, this first issue is answered in favor of the landlord. Where a tenant has received the required notice but not *279 made a timely request for comparable housing, no comparable housing need be offered by a landlord.

ISSUE II

WHERE A LANDLORD CONTINUES TO COLLECT RENT FOR TWO YEARS AFTER THE EFFECTIVE DATE OF A THREE YEAR "CONVERSION NOTICE" DOES THE LANDLORD WAIVE THE BENEFIT OF THE NOTICE, IS THE LANDLORD ESTOPPED FROM ENFORCING THE NOTICE, OR IS THE LANDLORD SUBJECT TO LACHES?
The doctrine of laches provides an equitable defense that may be interposed in the absence of the statute of limitations. There is no fixed period for the application of the doctrine; characteristically, it is flexible. However, it is not the delay only that permits the application of the doctrine, but also whether a party (here, the tenant) has been misled to his harm by the delay. See generally, Lavin v. Hackensack Bd. of Ed., 90 N.J. 145, 151-153 (1982). Further, the party raising the defense must show that the delay was unreasonable under the circumstances. Bergen County Welfare Board v. Cueman, 164 N.J. Super. 401, 407 (Cty.Ct., 1978).
I find that there was no prejudice shown by the defendant tenant. The alternative, i.e., prompt enforcement of the three year notice, would have effected the same remedy now sought. The remedy would have been an earlier eviction. The defendant has not shown any greater detriment from an eviction at this time than he would have suffered by an eviction two years ago. Hence, there is no prejudice from the delay, and the defense of laches is not available in the facts of this case.
New Jersey recognizes two types of estoppel, "promissory" or "equitable." Promissory estoppel requires four separate factual elements: (1) a clear and definite promise, (2) made with the expectation that the promisee will rely thereon, (3) and *280 which the promisee reasonably does, (4) resulting in a definite and substantial detriment incurred in that reliance. Promissory estoppel was applied in the landlord-tenant relationship in Royal Associates v. Concannon, 200 N.J. Super. 84 (App.Div. 1985), where the tenant bought a pet in reliance on the promise of the landlord that pets were permitted, and the court prohibited the eviction of the tenant for allegedly violating a "no pets clause" in the lease. However, in the subject case, neither a promise nor a detriment was shown by the delay in enforcing the three year notice. Therefore the landlord is not subject to the defense of promissory estoppel.
Equitable estoppel is essentially the same; it also requires a detrimental change in position based on reasonable reliance. However, the difference is that the party asserting it need not prove a promise, but may rely on conduct, inaction, representations of the actor, Miller v. Miller, 97 N.J. 154, 163 (1984), misrepresentation, silence or omission, Carlsen v. Masters, Mates etc., 80 N.J. 334, 339-42 (1979). The doctrine of equitable estoppel was held applicable in the landlord-tenant relationship in Carteret Properties v. Variety Donuts, 49 N.J. 116, 129 (1967). In that case, the Supreme Court remanded the matter for a consideration by the trial court of whether the landlord's continued acceptance of rent for an extended period with knowledge of breaches of the lease justified the application of the doctrine of either equitable estoppel or waiver. Again in the instant facts, the defendant did not show any detrimental change in position based on the inaction, or perhaps more technically, delay on the part of the plaintiff-landlord. Therefore the landlord is not subject to the defense of equitable estoppel.
The Supreme Court's application of the doctrine of waiver in Carteret was limited by the Appellate Division in Jasontown Apartments v. Lynch, 155 N.J. Super. 254, 259 (App.Div. 1978). Jasontown emphasized that waiver is a question of fact, notwithstanding its citation of Plassmeyer v. Brenta, 24 N.J. Super. *281 per. 322 (App.Div. 1953) for the proposition that "It is only where one conclusion can be reached on the facts adduced that it becomes a matter of law." 155 N.J. Super. at 259.
Both Jasontown and Carteret involved alleged breaches of lease provisions. The subject case does not; no breach has been alleged. Rather, the landlord seeks to enforce the right of summary eviction based upon a statutory ground, the conversion of an apartment unit to condominium ownership. Without the conversion of this apartment, the tenant would have had the right to what is in effect a perpetual lease, subject to eviction only for one of the grounds for summary eviction under N.J.S.A. 2A:18-61.1; see N.J.S.A. 2A:18-61.3. In other words, this case does not present an alleged breach of lease; the eviction is based on a statutorily granted right to the landlord, rather than a breach by the tenant. See N.J.S.A. 2A:18-61.1k.
The lack of the breach therefore distinguishes this case from both Carteret and Jasontown. The landlord had the statutory right to evict the tenant upon the expiration of the three year notice. Accordingly, only one conclusion could have been drawn in a timely suit for possession by the landlord; to wit the summary dispossession of the tenant. This distinction is itself suggested in Jasontown, where for example, the court noted that "... the alleged breach of the lease was neither admitted or clear." 155 N.J. Super. at 259. Because it appears that a timely suit for possession would have resulted in the landlord's favor, and because of the expedited processes in summary actions for possession, the illusory consequence hypothecated in Jasontown, id. at 261, does not support avoidance of the waiver as a policy matter.
The landlord, having the right to a timely eviction upon conversion pursuant to N.J.S.A. 2A:18-61.1k, is now seeking the benefit of that section while ignoring the obligations to the tenant under the act. Specifically, the landlord for the last two years has ignored its rights of eviction, has had the benefit of an income from a residential unit (where the tenant was formerly *282 protected from eviction without the existence of one of the grounds for eviction), and now seeks to evict the tenant without any of the grounds formerly required. To use a colloquialism, the landlord "would have it both ways." I consider this contrary to the spirit of the act.
The policy that must control this determination is the spirit of the legislation, N.J.S.A. 2A:18-61.1, et seq., and N.J.S.A. 2A:18-61.1a, subsections d and e, in particular, in order to effectuate its purposes. See also the Historical Note to Sec. 2A:18-61.2. The act is in derogation of the common law rights of a landlord to evict a tenant upon the termination of the rental term. Therefore, it has been said to require a "strict interpretation." However, any interpretation must remain consistent with the purposes of the legislation. The purposes of the act establishing certain limited grounds for evicting tenants and lessees of certain residential properties was based on a finding by the legislature of the extreme shortage of rental housing throughout the state, and the need to protect certain tenants from the difficulties attendant to an uncontrolled right of eviction.
It may appear that a finding of waiver will result in an attempt by landlords to evict pre-conversion tenants earlier; specifically, upon the expiration of the three year notice, and thereby frustrate the legislative purpose. The answers to this hypothesis are: 1) the right of the tenant to request comparable housing (or obtain the five months rent waiver after a one year stay, Mountain Management Corp. v. Hinnant, 200 N.J. Super. 129 (Law Div. 1984), aff'd 201 N.J. Super. 45 (App.Div. 1985)), and 2) the legislature has determined at least the minimum period for which a tenant is to be protected. The court cannot re-write either the benefits or the obligations of the statute.
The landlord had the right to summary eviction upon the conversion of this unit, but waived that right by accepting the benefits of collecting rent from a residential tenant for two years after the summary right to possession accrued. This *283 decision accords with "the great weight of authority," to wit, that acceptance of rent by a landlord for periods subsequent to the expiration of a notice to quit constitutes a waiver of the benefits of the notice. Annotation, waiver or revocation by landlord of notice given by him to terminate tenancy, 120 A.L.R. 557, 562 (1939). In this case there was a voluntary relinquishment of a known right to evict the tenant, manifested by the collection of rent for two years. That being the definition of waiver, I find that the landlord has waived the right to the benefits of the three year notice. Therefore, this complaint is hereby dismissed.