702 A.2d 1359

ARTEMIO RIVERA AND ALBERT KARWOWSKI, PLAINTIFFS–
APPELLANTS, v. TRUMP PLAZA HOTEL & CASINO, A NEW
JERSEY CORPORATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 28, 1997—Decided December 3, 1997.

Before Judges DREIER, KEEFE and PAUL G. LEVY.[1]

*Paul R. Melletz* argued the cause for appellants (*Mr. Melletz,* on the brief).

*Jed L. Marcus* argued the cause for respondent (*Grotta, Glassman & Hoffman,* attorneys; *Mark A. Saloman* and *Mr. Marcus,* on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

In this alleged wrongful termination case, plaintiffs, Artemio Rivera and Albert Karwowski, appeal from the entry of summary judgment in favor of defendant Trump Plaza Hotel & Casino (Trump Plaza). On appeal, plaintiffs present the following issues:

I. THE COURT ABUSED ITS JUDICIAL DISCRETION WHEN IT TOOK JUDICIAL NOTICE TO FIND THAT A PONY TAIL HAIR STYLE IS NOT A TRADITIONAL HAIR STYLE.

II. THE COURT IMPROPERLY GRANTED SUMMARY JUDGMENT BECAUSE THERE ARE MATERIAL FACTUAL DISPUTES.

III. SEX DIFFERENTIATED HAIR–LENGTH POLICIES DO CONSTITUTE A FORM OF SEX DISCRIMINATION UNDER THE NJLAD.

---

[1] Judge Dreier did not participate in oral argument. However, the parties consented to his participation in the decision.

IV. PLAINTIFFS' ALLEGATIONS ARE SUFFICIENT TO ESTABLISH A CLAIM FOR SEXUAL DISCRIMINATION UNDER THE NJLAD.

V. PLAINTIFFS' THIRD AND FOURTH COUNTS OF THE COMPLAINT BASED ON IMPROPER DISCHARGE SHOULD NOT BE DISMISSED.

VI. PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD NOT HAVE BEEN DISMISSED.

We find no merit in these contentions and affirm for the reasons stated herein.

The record discloses the following facts. Plaintiff Rivera commenced employment with Trump Plaza as a full-time dealer in its casino on May 4, 1984. Plaintiff Karwowski commenced employment as a part-time dealer on March 17, 1986, and became a full-time dealer in December 1991. Both plaintiffs signed employment applications which stated that they were at-will employees. The following statement appears under the certification and release portion of Rivera's application:

> I also agree and understand that if employed by the "Company" my employment is for no definite period of time and may, regardless of the date of payment of my salary, be terminated at any time with the customary notice as prescribed by law either by myself or by the "Company."

The following statement appears under the certification and release portion of Karwowski's application:

> I understand and agree that if employed by the "Company" my employment is for no definite period of time and may be terminated with or without cause or with or without notice at any time by either myself or by the "Company."

Further, both plaintiffs received employee handbooks that disclaimed any contractual relationship between them and defendant, and both signed receipts acknowledging that they did not have an employment contract with Trump Plaza. The employee handbook's receipt specifically stated:

> I understand and agree that any provision of this Handbook may be amended or revised at any time by Trump Plaza Hotel & Casino. I also understand and agree that my employment is terminable at will so that Trump Plaza Hotel & Casino and I remain free to choose to end our work relationship, and further expressly agree that nothing in this Handbook in any way creates an expressed or implied contract of employment between Trump Plaza Hotel & Casino and me.

While working at Trump Plaza, both Rivera and Karwowski had worn a ponytail as a hair style since 1988 and 1992, respectively.

On November 21, 1994, Barry Cregan, Trump Plaza's Chief Operating Officer, posted a notice to all the employees of Trump Plaza that a revised Appearance and Grooming Policy would be effective January 1, 1995. Both plaintiffs testified at their depositions that such a notice was in fact posted. The policy provided in pertinent part that:

Hair must be clean, neatly combed and arranged in a traditional style (Men: no longer than mid-collar in the back, to the earlobe on the side), and natural in color. Extreme looks such as unnatural hair color, extreme ornamentation for hair or shaved-in designs are unacceptable.

Before the effective date of the policy, Karwowski had a discussion with Cregan to discuss his hair, and threatened to sue Cregan for sexual discrimination if he was fired because of his ponytail. From Karwowski's conversation with Cregan, he understood that Cregan did not like ponytails, and he attempted to convince Cregan to allow ponytails in his new appearance and grooming policy. Rivera also knew that the policy did not allow men to have hair that was longer than mid-collar and, therefore, attempted to comply with the policy by tucking his ponytail inside his collar. Neither employee was required to cut his hair, but rather plaintiffs were advised that Trump Plaza would allow them to wear a wig if they chose not to cut their hair in order to comply with the policy.

On December 29, 1994, Karen Wisher, Trump Plaza's Casino Manager, sent a memorandum to all casino games personnel informing them that, effective January 1, 1995, a Disciplinary Action Policy would be implemented along with the Appearance and Grooming Policy. The Disciplinary Action Policy provided that:

Effective January 1, if an employee reports to work in violation of ANY of the appearance standards, he/she will be issued a Record of Discussion and will be allowed to complete their shift. If he/she returns to work on their next shift still in violation, he/she will be issued a Written Warning and allowed to complete their shift. If he/she returns on the next shift and has still failed to comply, they will be given a Final Written Warning and suspended for the next three (3) working days and sent home, without pay. If, at the completion of the Suspension, the employee has still failed to comply, they will be terminated.

On January 2, 1995, Rivera received and signed a Record of Discussion, which informed him that his ponytail was in violation of the dress code. On January 3, 1995, Rivera reported to work without cutting his hair, and received and signed a Written Warning, which again informed him that his hair length was in violation of the policy. Rivera testified that at that point he understood how Trump Plaza interpreted its policy. Rivera returned to work on January 4, and still had not cut his hair, at which point he was notified in writing that he was being suspended until January 9. On the written notice of suspension, which he signed, it stated that Rivera was being suspended because his hair length violated the dress code. Rivera was told at that point that he would be allowed to wear a wig. Rivera knew that if he returned without cutting his hair he would be fired. Rivera refused to cut his hair, regardless of the consequences. On January 9, Rivera received a discharge notice, which he signed.

Karwowski received a verbal and written warning on January 3, 1995, which stated that his ponytail and the length of his hair was in violation of the dress code because when his hair was not in a ponytail, it would be past mid-collar. Karwowski received a second written warning on January 4. Karwowski acknowledged that Trump Plaza's interpretation of the policy was that a ponytail was not a traditional hairstyle. On January 5, Karwowski was given a notice that he was being suspended for three days. Upon getting this document, Karwowski knew that any future violation of the code would result in his discharge. Karwowski returned to work on January 12 and, not having cut his hair, received a discharge notice. Karwowski had his hair photographed prior to being terminated, which showed that his hair did not fall below his mid-collar when it was in a ponytail.

Plaintiffs filed a Complaint against Trump Plaza alleging sex discrimination in violation of the New Jersey Law Against Discrimination (NJLAD), *N.J.S.A.* 10:5–1, *et seq.* (First and Second Counts), improper discharge (Third and Fourth Counts), and

breach of implied covenant of good faith and fair dealing (Fifth and Sixth Counts).

Defendant filed a motion for summary judgment on September 20, 1996, seeking dismissal of the Complaint in its entirety. On October 25, 1996, Judge Previti entertained oral argument and entered an order dismissing the Complaint with prejudice. This appeal followed.

In making his decision, Judge Previti took judicial notice that a ponytail is not a traditional hairstyle for men. *N.J.R.E.* 201. Plaintiffs contend that the judge abused his discretion in doing so. The issue, however, is irrelevant to a determination of this case on its merits. Thus, we do not decide the issue.

We are satisfied that the disclaimer signed by each of the plaintiffs was so sufficiently clear and prominent that anyone reading the disclaimers would reasonably have thought they were intended to create legally binding obligations. *See Woolley v. Hoffmann–LaRoche, Inc.,* 99 *N.J.* 284, 299, 491 *A.*2d 1257 (1985). That is to say, plaintiffs were, as a matter of law, at-will employees of Trump Plaza and could be terminated with or without cause. At best, plaintiffs could only anticipate receiving the benefit of the progressive discipline policy in respect of violations stemming from the newly promulgated appearance standards. It is undisputed on this record that plaintiffs received progressive discipline as set forth in the Disciplinary Action Policy.

To the extent that employment at-will nonetheless implicates a covenant of good faith and fair dealing, there is no evidence that such covenant was breached in this case. We acknowledge that the Appearance and Grooming Policy was somewhat ambiguous on its face. For example, it is not readily ascertainable whether the parenthetical phrase "Men: no longer than mid-collar in the back, to the earlobe on the side" was intended only as an example of a non-traditional style for men or was meant as the exclusive definition of what was intended by the phrase "traditional style" with respect to men. Notwithstanding

that facial ambiguity, plaintiffs were not kept in the dark very long as to how management interpreted the policy. Indeed, both plaintiffs had notice before the policy was in effect that their hairstyles were considered to be violative of the policy. In an at-will employment, there is no question but that the employer has the right to interpret its own policy. Here, plaintiffs received adequate notice of that interpretation and were given an opportunity to comply with it. Under such circumstances, no reasonable jury could find that Trump Plaza breached the covenant of good faith and fair dealing. *See Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995).

The right to terminate an employee at-will in the absence of an employment contract is subject to challenge only where the termination violates "a clear mandate of public policy." *Pierce v. Ortho Pharm. Corp.*, 84 *N.J.* 58, 72, 417 *A.*2d 505 (1980). Sources of public policy may include "legislation; administrative rules, regulations or decisions; and judicial decisions." *Ibid.* Thus, plaintiffs' termination in this case, not having been in violation of the agreed upon progressive disciplinary policy, was subject to challenge only if plaintiffs can prove a public policy mandate exception. In this respect, plaintiffs contend that Trump Plaza's hair-length policy constitutes a form of sex discrimination under the NJLAD. That contention creates an issue of law, not of fact.

The precise question has not been addressed by a New Jersey court. New Jersey courts have, however, evaluated gender-based claims of employment discrimination by using the analysis and rationale established by the federal courts in cases brought under Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e (Title VII), which is the NJLAD's federal counterpart. *Erickson v. Marsh & McLennan Co., Inc.*, 117 *N.J.* 539, 551–552, 569 *A.*2d 793 (1990); *Goodman v. London Metals Exchange, Inc.*, 86 *N.J.* 19, 31–33, 429 *A.*2d 341 (1981).

Federal courts have clearly indicated that hair length policies, such as that in question here, do not constitute sex discrimination under Title VII. *Tavora v. New York Mercantile Exch.*, 101 *F.*3d

907, 908–909 (2d Cir.1996), *cert. denied,* —— *U.S.* ——, 117 *S.Ct.* 1821, 137 *L.Ed.*2d 1029 (1997); *Barker v. Taft Broad. Co.,* 549 *F.*2d 400, 401 (6th Cir.1977); *Earwood v. Continental Southeastern Lines, Inc.,* 539 *F.*2d 1349, 1351 (4th Cir.1976); *Longo v. Carlisle DeCoppet & Co.,* 537 *F.*2d 685 (2d Cir.1976); *Knott v. Missouri Pac. R.R. Co.,* 527 *F.*2d 1249, 1252 (8th Cir.1975); *Willingham v. Macon Tel. Publ'g. Co.,* 507 *F.*2d 1084, 1088 (5th Cir.1975); *Baker v. California Land Title Co.,* 507 *F.*2d 895, 896 (9th Cir.1974), *cert. denied,* 422 *U.S.* 1046, 95 *S.Ct.* 2664, 45 *L.Ed.*2d 699 (1975); *Dodge v. Giant Food, Inc.,* 488 *F.*2d 1333, 1334–1335 (D.C.Cir.1973); *Fagan v. National Cash Register Co.,* 481 *F.*2d 1115, 1126 (D.C.Cir.1973).

Plaintiffs' reliance on a line of state school board cases for the proposition that they have a constitutional right to wear their hair in any manner they choose in a place of private employment is without merit. *See Lansdale v. Tyler Junior College,* 470 *F.*2d 659 (5th Cir.1972), cert. denied, 411 *U.S.* 986, 93 *S.Ct.* 2268, 36 *L.Ed.*2d 964 (1973); *Massie v. Henry,* 455 *F.*2d 779 (4th Cir.1972); *Stull v. School Board of The W. Beaver Jr.–Sr. H.S.,* 459 *F.*2d 339 (3rd Cir.1972); *Crews v. Cloncs,* 432 *F.*2d 1259 (7th Cir.1970); *Breen v. Kahl,* 419 *F.*2d 1034 (7th Cir.1969), *cert. denied,* 398 *U.S.* 937, 90 *S.Ct.* 1836, 26 *L.Ed.*2d 268 (1970). The protection of individual rights and liberties afforded under the Constitution of the United States only applies to state action and is not applicable to a private employer such as Trump Plaza. *See Willingham, supra,* 507 *F.*2d at 1088 (holding that the due process and equal protection standards do not apply to a private employer because "there is no state action present giving rise to a constitutional question").

Plaintiffs also argue that they established a claim for sexual discrimination under the NJLAD because the defendant interpreted its rules for hair length and style differently for men and women. We disagree.

To establish a prima facie claim of discriminatory discharge under the NJLAD, a plaintiff must prove:

that he was in the protected * * * group, [2] that he was performing his job at a level that met his employer's legitimate expectations, [3] that he nevertheless was fired, and [4] that [the employer] sought someone to perform the same work after he left.

[*Clowes v. Terminix Intern., Inc.* 109 *N.J.* 575, 597, 538 *A.*2d 794 (1988) (quoting *Loeb v. Textron, Inc.*, 600 *F.*2d 1003, 1014 (1st Cir.1979)).]

In a gender-based claim of reverse discrimination, where the plaintiff is not a member of the minority and not representative of persons usually discriminated against in the work place, the first prong of the *Clowes* standard is modified to "require the plaintiff to show that he has been victimized by an 'unusual employer who discriminates against the majority.'" *Erickson, supra,* 117 *N.J.* at 551–552, 569 *A.*2d 793 (1990) (citations omitted). In this case, both plaintiffs are members of a class that historically has not been victimized by discrimination. Therefore, modification of the first prong of the *Clowes* test is appropriate. *Id.* at 552, 569 *A.*2d 793.

Plaintiffs do not satisfy the modified first prong of the *Clowes* test. Plaintiffs have proffered no evidence to indicate that they have been victimized by an unusual employer who discriminates against the majority, nor do they demonstrate that Trump Plaza engaged in a pattern of sex discrimination that favored women over men. Thus, on this basis, the trial court properly held that plaintiffs failed to establish a prima facie claim of discriminatory discharge.

Affirmed.