**Rose Marie BARONE, Plaintiff,**

v.

**LEUKEMIA SOCIETY OF AMERICA, Defendant.**

**No. CIV.A. 97–2576 (JEI).**

United States District Court, D. New Jersey.

Nov. 25, 1998.

---

Willig, Williams & Davidson by William H. Haller, Patricia V. Pierce, Philadelphia, PA, for Plaintiff.

Lasser Hochman, L.L.C. by Jodi Lee Alper, Roseland, NJ, David B. Rigney, New York City, Gilbert, Segall and Young LLP by Daniel L. Kurtz, New York City, for Defendant.

**OPINION**

IRENAS, District Judge.

Presently before this Court is defendant's motion for summary judgment of plaintiff Rose Marie Barone's claim that the termination of her employment violated the New Jersey Family Leave Act, N.J.S.A. § 34:11B–1 *et seq.* ("FLA") and resulted in a breach of her contract for employment. For the reasons set forth below, defendant's motion for summary judgment is granted in part and denied in part.

**I.**

**A.**

Plaintiff Rose Marie Barone ("Barone") was employed at the Southern New Jersey Chapter of the Leukemia Society of America ("the Society") for twenty five years. On or about January 26, 1996, Barone was hospitalized for an acute kidney infection associated with a kidney stone. She was discharged from this initial hospitalization on January 29, 1996. At the time of her hospitalization, Barone learned that her husband had been diagnosed with terminal cancer. When Barone was released from the hospital, she contacted Paul McBride, the executive director of the Society, informed him of her condition, and told him that she could not anticipate a return date, due to her husband's terminal condition. Barone underwent surgery on March 11, 1996, to remove her kidney stone and remained in the hospital for five days.

On or about April 3, 1996, Stephanie Rouse ("Rouse"), the Director of Personnel Services in the Society, telephoned Mrs. Barone to discuss her medical condition and to advise her that she would be sending her an application for short-term disability benefits. On April 30, 1996, Rouse sent a letter to Barone requesting that she submit a medical certification regarding her condition. Rouse also sent Barone a New Jersey Disability Claim form, and requested that she complete and submit it to the New Jersey Department of Labor for processing. Barone subsequently received benefits from the New Jersey Dept. of Labor, Division of Temporary Disability Insurance, for the duration of her medical leave commencing in January of 1996.

Barone responded by letter to Rouse and included a note from Albert Carey, her personal physician, stating that Barone was currently under his care with regard to the kidney stone condition and that she would be able to return to work by July 10, 1996. During her tenure with the Society, Barone had accumulated 130 sick days, which she used during the course of her medical leave in 1996, and thereby received her regular salary up until July

26, 1996.[1] By correspondence dated July 23, 1996, Rouse notified Barone that she would be exhausting her sick leave as of July 26th and that she was therefore receiving her last paycheck. Rose also included an application form for long-term disability insurance. Barone consulted with Dr. Carey upon receipt of the long-term disability application. Dr. Carey advised Barone that since her own health condition had improved by late July of 1996, she was not eligible to receive long-term disability benefits. On August 7, 1996, Barone advised Rouse that she was not eligible for long-term disability and that she was considering whether "to retire or take advantage of the Family Medical Sick Leave Act." (Barone Dep.).

Barone's husband died on August 9, 1996. On the same day, she sent a note to Rouse, stating that her husband died and she planned to return to work on September 4, 1996. At no time did any agent or employee of the Society indicate to Barone that she should return back to work sooner than September 4, 1996 or that she would be terminated unless she did so. Barone received a telephone call in late August and a letter dated August 22, 1996, from Benita Shobe ("Shobe"), the Society's Vice President for Chapter Development, advising her that she had been terminated from employment. Shobe advised Barone that her duties had been reassigned.[2]

**B.**

Plaintiff filed her first complaint on May 21, 1997 and an amended complaint on January 21, 1998, requesting relief pursuant to 1) the Family and Medical Leave Act of 1993, 29 U.S.C. § 260, *et seq.* ("FMLA"); 2) the New Jersey Law Against Discrimination, N.J.S.A. § 10:5–1, *et seq.* ("NJLAD"); 3) New Jersey Common law for Breach of Contract; and 4) the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). On May 18, 1998, the Society served upon plaintiff a motion for summary judgment on all four counts. On July 30, 1998, the Court dismissed all claims pursuant to the FMLA and all claims based on age discrimination under federal or state law. The Court's Order granted plaintiff leave to file a Second Amended Complaint pursuant to the New Jersey Family Leave Act, N.J.S.A. 34:11B–1 *et seq.* ("FLA").[3] The Court retained jurisdiction pursuant to 28 U.S.C. § 1367(a). On August 14, 1998, plaintiff filed a second amended complaint asserting claims pursuant to the FLA and New Jersey common law for breach of contract. On October 29, 1998, the Society filed the instant motion for summary judgment seeking dismissal of plaintiff's FLA and contract claims.

This Court holds that when an employee is on leave for the FLA-qualifying reason of caring for a sick relative, such relative dies, and the employee immediately indicates a desire to return to work, the employer has the minimal obligation to advise the employee at what point she must return to maintain her FLA protection. In this limited circumstance, an employer who fails to advise the employee on what date she must return to work to avoid foregoing her statutory right to reinstate-

---

1. Although the period from January 26, 1996 through July 26, 1996 amounted to 182 calendar days, such period amounted to 130 business days.

2. On July 1, 1996, the Society hired Angela Rossi to perform clerical duties on a part-time basis. In April of 1996, the Society hired Rose Kitchin as a project receptionist/assistant on a part-time basis. Kitchin was converted to full-time status on or about July 1, 1996.

3. The FLA provides that an employee "shall be entitled to a family leave of twelve weeks in any twentyfour month period upon advance notice to the employer[.]" New Jersey Family Leave Act, N.J.Rev.Stat. § 34:11B–4. The FLA defines "family leave" as "leave from employment so that the employee may provide care made necessary by reason of: (3) the *serious health condition* of a family member of the employee." *Id.* at § 34:B11–3(i). "Family member" is defined by the statute as meaning "a child, parent, or spouse." *Id.* at § 34:11B–3(j).

ment violates the notice provisions of the FLA. This holding is consistent with the statute itself and the regulations promulgated pursuant to its federal counterpart. *See* N.J.S.A. 34:11B–6; 29 C.F.R. § 825.301. Accordingly, defendant's motion for summary judgment of plaintiff's contract claims will be granted and defendant's motion for summary judgment of plaintiff's FLA claim will be denied.

## II.

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. Where the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Idus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

## III.

Defendant argues that plaintiff has no basis for a claim under the FLA or under contract law. Defendant's FLA argument has three bases. First, defendant argues that Barone used up her FLA entitlement, since her paid leave which commenced in January, 1996, was for a combination of her and her husband's sickness and exceeded twelve weeks. Second, defendant argues that Barone has no FLA claim because she did not provide the Society with the requisite notice. Third, defendant argues that even if Barone had an FLA claim, any entitlement that she had was extinguished upon her husband's death on August 9, 1996. Neither party disputes that Barone was an "employee" of defendant Society, and that the Society itself constitutes an "employer" within the meaning of the FLA.

Plaintiff argues that where an employee is on leave to care for the serious health condition of a family member, the predicate for such leave terminates by way of the family member's death, and the employee indicates a desire to return to work, the employer is obligated to advise the employee when she must return to work so she does not lose her right to reinstatement under the FLA. In other words, plaintiff argues that on August 9, 1996, when she wrote a note informing the Society that her husband died and indicating a desire to return to work on September 4, 1996, the Society was obligated to inform her that she must return to work sooner or

she would forfeit her right to reinstatement under the FLA. Because the Society failed to notify Barone of her responsibilities under the statute and the consequences of her failure to meet her FLA obligations, this Court finds that defendant violated the notice provisions of the FLA.

### A.

Plaintiff argues that she and the Society were parties to a binding, contractual employment relationship and that the Society violated its own personnel policy and the implied covenant of good faith and fair dealing by firing her. Defendant contends that plaintiff was an

at-will employee who could be discharged with or without cause.

The Society's employee handbook provides:

> The policies outlines in this employee handbook, as well as the handbook itself, are not intended as a contract of employment. They may be added to or changed as needed. The Society adheres to the doctrine of employment-at-will, which enables either the employee or the employer to terminate the employment relationship at any time, upon notice. The Society reserves the right to unilaterally delete, change, or add to its personnel policies at any time as it deems necessary. This Handbook supersedes and replaces any previous employee handbooks or policy statements, whether written or oral.

Plaintiff admits that her employment relationship was at-will and that no implied promise of continued employment in the Society's employee handbook may be enforced against the Society. *See Woolley v. Hoffmann–La Roche, Inc.* 99 N.J. 284, 491 A.2d 1257 (1985) (holding that absent a clear disclaimer, an implied promise contained in employment manual that an employee will be fired only for cause may be enforceable against an employer even when employment is for an indefinite term and would otherwise be terminable at will).

This Court finds that even if plaintiff's employment relationship with defendant can be described as "contractual," plaintiff had no individual contract of employment with defendant which might be construed to provide continued employment or forbid termination without cause. The New Jersey Supreme Court has established employment-at-will as the prevailing doctrine in this state. *See Bernard v. IMI Systems, Inc.*, 131 N.J. 91, 105, 618 A.2d 338 (1993). Absent the identification of a specific expression of public policy, an at-will employee may be discharged with or without cause. *See Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505 (1980). Although the Society's employee handbook may create binding duties and obligations between an employee and employer, such as the 130 days of sick leave or five days of bereavement leave, the record supports the conclusion that Barone received those benefits before she was terminated.

In the absence of a contract, there is no implied covenant of good faith and fair dealing which might be used as a basis for finding a right to continued employment. *See Fischer v. Allied Signal Corp.*, 974 F.Supp. 797, 808 (D.N.J.1997); *Kapossy v. McGraw–Hill, Inc.* 921 F.Supp. 234, 248 (D.N.J.1996); *Noye v. Hoffmann–La Roche Inc.*, 238 N.J.Super. 430, 434, 570 A.2d 12 (App.Div.1990). Plaintiff cites several cases that state that a contractual obligation of good faith and fair dealing is implied in every contractual relationship in New Jersey, even if it is at-will. Defendant correctly argues that these cases merely indicate that, to the extent there are contractual obligations in an at-will employment relationship, there is a duty to deal fairly and in good faith. *See Rivera v. Trump Plaza Hotel & Casino*, 305 N.J.Super. 596, 601, 702 A.2d 1359 (App. Div.1997) ("[T]o the extent that employment at will nonetheless implicates a covenant of good faith and fair dealing, there is no evidence that such covenant was breached in this case."); *Bonczek v. Car-*

*ter–Wallace, Inc.,* 304 N.J.Super. 593, 599, 701 A.2d 742 (App.Div.1997) (stating that a contract that generates employment which commenced in New Jersey would be subject to the duty of good faith and fair dealing implicit in all contracts, even employment contracts at will); *Peck v. Imedia, Inc.,* 293 N.J.Super. 151, 168, 679 A.2d 745 (App.Div.1996) (stating that the doctrine of good faith and fair dealing applies where there is some type of employment contract, even if it is merely at-will). None of these cases hold that the employer's obligation to act in good faith imposes on the employer a contractual obligation to provide continued employment or to fire only for good cause.[4]

### B.

Company benefits commonly provide employees with benefits as great as, or greater than, those statutorily provided by the FLA. For example, the Society's sick leave policy permits employees to accumulate up to 130 unused sick days (six calendar months) which may be used for personal illnesses or to continue income during absences under the *company's* Family and Medical Leave policy.[5] The extent to which leave granted pursuant to an employer's policy may be deemed to satisfy its FLA obligation is an issue raised by the facts of this case.

Defendant argues that Barone exhausted her twelve week entitlement under the FLA during her leave commencing January 26, 1996. While it is unclear precisely how many weeks of plaintiff's leave were directed at caring for her husband as opposed to herself, it is clear that Barone was protected from January 26 through July 26, 1996, by the Society's internal policy, independently of any protection to which she may have been entitled by the New Jersey FLA. The Society maintains that because Barone's more than six month leave was based upon a combination of her and her husband's illness, she received all the leave to which she was entitled under the FLA—and more.[6]

In *Viereck v. City of Gloucester City,* 961 F.Supp. 703, 708 (D.N.J.1997), this Court held that an employer was not entitled to designate employee's leave as FMLA leave retroactively where the employer had the requisite knowledge to determine that the leave was FMLA-qualified but failed to do so. As the FLA was modeled from its federal counterpart,[7] the Code of Federal Regulations is also instructive. 29 C.F.R. § 825.208(a) provides:

> In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA qualifying, and to give notice of the designation to the employee as provided in this section.... An employee giving notice of the need for unpaid FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligations to provide notice, though the employee would need to state a qualifying reason for the needed leave.... Once the employee has acquired knowledge that the leave is being taken for an FMLA qualified reason, the employer must promptly (within two business days absent extenuating circumstances)

4. To the extent that plaintiff argues that failing to respond to her August 9, 1996, letter was itself a breach of the duty of good faith and fair dealing, the Court feels that such claim is better analyzed under the doctrine of equitable estoppel. *See infra* pp. 21–23.

5. The Society's own Family and Medical Leave policy provides its employees with leave for reasons cognizable under the FLA, namely twelve weeks of leave to care for a seriously ill spouse.

6. The Society believes that Barone had received every possible entitlement provided by the Act because she was out of work for approximately twenty-nine weeks "due in large part to her husband's condition." (Society's Brief). Although not relevant to our holding, there is some evidence in the record that Barone was not cleared by her physician to return to work until July 10, 1996.

7. *See* 29 U.S.C.A. § 2601 *et seq.*

notify the employee that the paid leave is designated and will be counted as FMLA leave....

29 C.F.R. § 825.208(a), (a)(2), (b)(1). § 825.208(c) provides:

If the employer requires paid leave to be substituted for unpaid leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, this decision must be made by the employer within two business days of the time the employee gives notice of the need for leave, or, have sufficient information to make a determination, when the employer determined that the leave qualifies as FMLA leave if this happens later. The employer's designation must be made before the leave starts, unless the employer does not have sufficient information as to the employee's reason for taking the leave until after the leave commenced. If the employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employee either gives notice of the need for leave or commences leave and fails to designate the leave as FMLA leave ..., the employer may not designate leave as FMLA leave retroactively, and may designate only prospectively as of the date of notification to the employee of the designation. In such circumstances, the employee is subject to the full protections of the Act, but none of the absence preceding the notice to the employee of designation may be counted against the employee's [twelve] week leave entitlement.

The Society could have, but did not, designate Barone's leave as FLA leave. Because the Society had the requisite knowledge to determine that Barone's leave was FLA-qualified but failed to designate her leave accordingly, the Society is not entitled to designate Barone's leave as FLA leave retroactively. Any leave taken by plaintiff prior to July 26, 1996, for her own illness or to care for her sick husband, was covered by the Society's policy. Barone had not even begun to use her twelve week entitlement to FLA leave as of July 26, 1996.

**C.**

■ Alternatively, defendant argues that even if Barone had not exhausted her FLA leave by July 26, 1996, Barone's leave subsequent to such date was not covered by the FLA because she never gave the Society proper "advance notice" of her need for such leave. *See* N.J.S.A. § 34:11B–4. The Society cites the applicable regulations implementing the New Jersey FLA to support this proposition: "The employee who requests the leave must provide the employer reasonable advance notice, the length of which to be determined by the type of leave requested." N.J.A.C. 13:14–1.4. Although the Society does not dispute that Barone notified Paul McBride ("McBride"), her direct supervisor at the Society, as early as late January or early February 1996 that she would be needing family leave to care for her terminally ill husband, they argue that her August 9, 1996, letter (informing the Society that her husband had died and of her intent to return to work on September 4, 1996) did not constitute notice for her need for FLA leave. Plaintiff argues that the Society was on notice since the time of her conversation with McBride and that the Society should have advised her if they desired that she return to work sooner than September 4, 1996.

In *Viereck v. City of Gloucester City,* 961 F.Supp. 703, 707 (D.N.J.1997), this Court found that an employee's telephone call informing her employer that she was had been hospitalized and would be unable to return to work for some time due to her medical condition was sufficient notice under FMLA case law that she was in the "serious health condition" category of employees eligible for FMLA leave. The C.F.R. itself provides that "[t]he employee need not expressly asserts rights under the FMLA or even mention the FMLA, but may only state that leave is needed."

29 C.F.R. § 825.303(b). *See also Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir.1998) (stating that employee need not mention FMLA by name to provide employer notice of request for FMLA leave; the critical question is whether the information imparted to employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir.1995) (stating that an employee giving notice of the need for unpaid FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet [her] obligation to provide notice, though [she] would need to state a qualifying reasons for the needed leave); *D'Alia v. Allied–Signal Corp.*, 260 N.J.Super. 1, 9, 614 A.2d 1355 (App.Div.1992) (stating that precise form in which this information is conveyed is not dispositive and there are no magic words that must be used; critical question is whether information imparted to employer is sufficient to reasonably apprise it of employee's request to take time off for a reason specified in N.J.S.A. 334:11B–3).

Both the C.F.R. and the case law establish that Barone's conversation with McBride in January or February of 1996 was sufficient to apprise the Society of her request to take time off for a reason specified in the New Jersey FLA. Barone was therefore protected by the FLA from July 26, 1996, until the day of her husband's death on August 9, 1996.

### IV.

#### A.

Lastly, defendant argues that even if Barone was entitled to FLA leave based upon her husband's condition, any right she had extinguished upon her husband's death and therefore the Society did not violate the FLA by terminating her employment. Federal courts that have addressed this issue have held that bereavement leave or absence from work following the death of one's immediate family is not protected by the FMLA. *See Sharpe v. MCI Telecommunications Corp.*, 1998 WL 567947, *5 (E.D.N.C.1998) (holding that employee's two-week absence from work following the death of her mother did not qualify as FMLA leave); *Lange v. Showbiz Pizza Time, Inc.*, 12 F.Supp.2d 1150, 1153–54 (D.Kan.1998) (holding that bereavement leave which arose following the death of employee's mother is not protected by the FMLA); *Fisher v. State Farm Mutual Automobile Insurance Co.*, 999 F.Supp. 866, 869 (E.D.Tex.1998) (finding that former employee who took unauthorized leave following his father's death was not incapacitated and did not meet FMLA requirements for having a "serious health condition" and thus was not eligible for FMLA leave); *Beal v. Rubbermaid Commercial Products, Inc.*, 972 F.Supp. 1216, 1226 (S.D.Iowa 1997) (finding that, under FMLA, leave is not meant to be used for bereavement, because deceased person has no basic medical, nutritional or psychological needs which need to be cared for); *Brown v. J.C. Penney Corp.*, 924 F.Supp. 1158, 1161–63 (S.D.Fla.1996) (finding that language of FMLA and relevant regulations indicated that "serious health condition" was limited to medical conditions affecting living individual and employee did not "care for" father when he engaged in activities in connection with father's affairs following father's death).

■ The language of the FLA and the case law support defendant's argument that Barone's entitlement to FLA leave extinguished after her husband's death. Bereavement or leave following the death of one's immediate family is absent from the FLA's definition of "family leave:"

'Family leave' means leave from employment so that the employee may provide care made necessary by reason of:

(1) the birth of a child of the employee;

(2) the placement of a child with the employee in connection with adoption of such child by the employee; or

(3) the serious health condition of a family member of the employee.

34 N.J.S.A. 34:11B–3(i). Put simply, with her husband's death Barone's predicate for leave under the act no longer existed. The Society's bereavement policy provides full-time employees with paid leave of up to five working days for the death of an immediate family member. Barone's spouse passed away on August 9, 1996. Pursuant to the Society's policy, Barone was protected from August 9, 1996 until August 19, 1996.[8] Since Barone did not plan to return to work until September 4, 1996, the Society argues that it did not violate her right to leave under the FLA by terminating her employment on or about August 22, 1996.

### B.

Barone was protected by the FLA while on leave to care for her terminally ill husband until August 9, 1996, the date of her husband's death. Barone was further protected by the company's bereavement policy until August 19, 1996. On August 9, 1996, plaintiff sent a note to the Society that clearly indicated her desire to return to work. The note stated, *inter alia:* "My husband passed away this morning. This changes my plans drastically. I plan to return to work on Sept. 4, 1996. Thank you for your help." Upon receipt of this letter, the Society never contacted Barone to inform her that her FLA rights expired or when she must return to work so she would not lose her right to reinstatement under the FLA. Instead, by telephone call

and letter dated August 22, 1996, the Society's next communication with Barone was to advise her that she had been terminated from employment.[9]

The FLA provides:

An employee who exercises the right to family leave under section 4 of this act shall, upon the expiration of the leave, be entitled to be restored by the employer to the position held by the employee when the leave commenced or to an equivalent position of like seniority, status, employment benefits, pay, and other terms and conditions of employment. . . .

N.J.S.A. 34:11B–7. The FLA further provides that an employer shall display conspicuous notice of its employees' rights and obligations pursuant to the provisions of this act, and use other appropriate means to keep its employees so informed. *See id.* at § 34:11B–6. The Society never designated any of plaintiff's leave as FLA leave or informed plaintiff of her rights or obligations under the act. Plaintiff claims that by failing to inform Barone of her obligation to return to work prior to September 4, 1996, and thereby risk losing her right to reinstatement, the Society violated the FLA notice requirements. Defendant urges this Court to interpret the language of the statute as not requiring an employer to notify an employee of the limitations on her right to FLA leave. Defendant's interpretation is contrary to the relevant regulations.

> Subsequent to your extended absence from work due to disability and the effect of your absence on the chapter's day to day operation, it has been necessary to reassign your duties, consequently, your employment has been terminated. On August 7, 1996, you stated to me by telephone that you intended to retire and would send a letter to that effect. Instead you sent a letter stating that you would return to work on September 4, 1996, but currently there is not a suitable position in the chapter available for you. *See* Statement of Undisputed Material Facts.

---

**8.** The Society's Bereavement policy provides: "Full-time employees will receive a paid leave of up to five working days for the death of an immediate family member. Members of the immediate family include an employee's spouse, parents, brothers, sisters, children, grandparents and parents-in-law." August 9, 1996 fell on a Friday. Because Barone was entitled to leave of five paid working days (August 12–16), Barone was protected by the Society's bereavement policy until Monday, August 19, 1996.

**9.** The Society's August 22, 1996 letter provided:

The C.F.R. is instructive as to the meaning and extent of an employer's "rights and obligations." 29 C.F.R. § 825.301 provides:

(a)(1) If an FMLA-covered employer has any eligible employees and has any written guidance to employees concerning employee benefits or leave rights, such as in an employee handbook, information concerning FMLA entitlements and employee obligations under the FMLA must be included in the handbook or other document. . . .

(b)(1) The employer shall also provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet theses obligation. . . . Such specific notice must include, as appropriate: . . .

(i) that the leave will be counted against the employee's annual FMLA leave entitlement; . . .

(vii) the employee's right to restoration to the same or an equivalent job upon return from leave; and; . . .

(c) Except as provided in this subparagraph, the written notice required by paragraph (b) (and by subparagraph (a)(2) where applicable) must be provided to the employee no less often than the first time in each six-month period that an employee gives notice of need for FMLA leave . . . The notice shall be given within a reasonable time after notice of the need for leave is given by the employee—within one or two business days if feasible. . . .

(f) If an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in this notice.

This Court recognizes that the FLA is intended to become an integral component of an employee's rights and must work in conjunction with other existing employee benefits. The Society had an employee handbook outlining the procedures for both the company's family and medical leave and bereavement policy. The handbook did not outline, however, the Society's procedure in the context of an employee already out on leave, caring for a sick relative, who experiences the death of such relative, nor how such policy is affected by the FLA. The handbook did not state, for example, that an employee is entitled to twelve weeks to care for a sick relative, but in the event of such relative's death, the employee's leave terminated five days after the date of death.

■ The C.F.R. makes clear that an employer must provide the employee with written notice detailing an employee's rights and obligations under the FMLA, and explaining any consequences of an employee's failure to abide accordingly. By letter dated August 9, 1996, the employee reached out to the Society indicating her desire to return to work. This Court finds that the Society was obligated to inform Barone when she must return to work under the FLA and company policy and the consequences of her failure to do so.

The C.F.R. recognizes that there may be specific situations where an employee's substantive rights and obligations under the FMLA will change and thereby imposes an obligation on the employer to update the employee of how these precise changes affect the employee's rights and obligations both under the FMLA and the employer's company policies. 29 C.F.R. § 825.301(c)(1) provides:

If the specific information provided by the notice changes with respect to a subsequent period of FMLA leave during the six-month period, the employer shall, within one or two business days of receipt of the employee's notice of need for leave, provide written notice referencing the prior notice and setting forth any of the information in subparagraph (b) [notice detailing employee's expectations, obligations and consequences of failure to meet these obligations] which has changed. . . .

The court in *Sherry v. Protection, Inc.,* 981 F.Supp. 1133, 1135–36 (N.D.Ill.1997), held that the employee did not forfeit his FMLA rights when he failed to return to work on the day after his father's death. In *Sherry,* the employee was already out on FMLA leave caring for his father who had a "serious health condition." *See* 29 U.S.C. § 2612(a)(1)(c). Defendants argued that Sherry forfeited his rights under the FMLA when he did not return to work for two weeks following the death of his father. The Court found that because defendants failed to notify Sherry of his rights and obligations under the FMLA, pursuant to 29 C.F.R. § 825.301(a)(2), 825.301(f), defendants could not rely on these provisions to penalize Sherry. The Court stated:

> Here, defendants never informed Sherry of his rights and obligations under the FMLA. Sherry requested five weeks of leave and was granted such leave without qualification. He was never told that he was required to return to work in the event his father died before the expiration of the five weeks. Moreover, Laws [the company's C.E.O.] attended the funeral, thus, he was well aware of the date of death and never requested Sherry to return to work; he allowed him to stay on leave for the full five weeks.

*Sherry,* 981 F.Supp. at 1136.

Like Sherry, Barone was out on leave caring for her sick spouse and was never told that she was required to return to work in the event her spouse died. The Society was aware of her spouse's death and of her desire to return to work, but failed to inform her when she must return so she would not lose her right to reinstatement under the FLA. The Society's failure to inform Barone of the date on which she must return to work without losing her FLA rights and subsequent termination after her protection had ended violated the notice provisions of the FLA. *See also Fry v. First Fidelity Bancorporation,* 1996 WL 36910, *6 (E.D.Pa.1996)

(concluding that an employer's failure to provide adequate notice of its FMLA policies to employees can constitute interference with FMLA rights when the lack of notice causes an employee to unknowingly violate substantive provisions of the employer's FMLA policies and the employer attempts to benefit from such lack of notice by denying an employee the benefits provided by the FMLA).

Prior to the death of Barone's spouse, she was entitled to twelve weeks leave under the FLA. Subsequent to his death, she was entitled to five days pursuant to the company bereavement policy. Because Barone wrote a letter to the Society alerting them that her reason for leave had altered and indicating her desire to return to work on a specified date, it was the company's responsibility to notify the employee that her rights and obligations had changed and specifically, that her right to reinstatement was about to terminate.

This Court holds that when an employee is out on leave for the FLA-qualifying reason of caring for a sick relative, such relative dies, and the employee immediately indicates a desire to return to work, the employer has the obligation to advise the employee at what point she must return to maintain her FLA protection. In this limited circumstance, an employer who fails to advise the employee of the date on which she must return to work without losing her right to reinstatement under the statute has violated the notice provisions of the FLA. This holding is consistent with the statute itself and the regulations promulgated pursuant to its federal counterpart. *See* N.J.S.A. 34:11B–6; 29 C.F.R. § 825.301.

**C.**

In the alternative, this Court finds that under the doctrine of equitable estoppel, the Society's conduct in the instant case precludes them from electing to terminate Barone's employment, a right to which they would have otherwise been entitled.

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might otherwise have existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Highway Trailer Co. v. Donna Motor Lines, Inc.*, 46 N.J. 442, 448–49, 217 A.2d 617 (1966) (quoting 3 Pomeroy's Equity Jurisprudence (5th ed.1941) § 804).

 Generally, equitable estoppel has three elements: 1) a representation (or misrepresentation); 2) knowledge, by the representor, that a second person is acting on the basis of that representation; and 3) substantial detrimental reliance by the second person on the representation. *See Panzino v. Scott Paper Co.*, 685 F.Supp. 458, 460 (D.N.J.1988). Equitable estoppel is applicable where "conduct, either express or implied, ... reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law." *Ridge Chevrolet–Oldsmobile, Inc. v. Scarano*, 238 N.J.Super. 149, 154, 569 A.2d 296 (App.Div.1990)(quoting *Miller v. Teachers' Pension & Annuity Fund*, 179 N.J.Super. 473, 477, 432 A.2d 560 (App.Div.1981)). A party asserting equitable estoppel may rely upon conduct, inaction, representation of the actor, misrepresentation, silence or omission. *Id.* (citing *Fairken Assoc. v. Hutchin*, 223 N.J.Super. 274, 280, 538 A.2d 465 (App.Div.1987)). The party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position ·for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know nor should it have known that its adversary's conduct was misleading. *See Heckler v. Community Health Serv.'s*, 467 U.S.

51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

 Barone was on FLA leave caring for her terminally ill husband. On the same day of her husband's death, Barone wrote to Society informing them that her husband died and indicated a clear desire to return to work on a specified date. Instead of contacting Barone to inform her that her FLA leave was over but she was protected by the company policy until August 19, 1996, the company waited until August 22, 1996, after her protection had expired, to inform her that she had been terminated. The Society's failure to notify plaintiff of her obligation to return to work prior to September 4, 1996, led Barone to believe that the conditions of the policy and her FLA obligations had been met. Had the Society informed her of her obligation to return to work on August 19, 1996, and of the consequences of her failure to meet this obligation, she could have taken appropriate steps to protect her interests. She may have, for example, chosen to return to work on August 19, 1996.

In these circumstances, the Society may not benefit from their inaction, which led Barone to believe that her anticipated return date would not affect her employment. Since the employer failed to notify Barone at any time during her leave of her rights and obligations under the FLA or company policy, and her August 9, 1996, letter clearly expressed her desire to return to work on September 4, 1996, it is certain that the Society knew that Barone would act on the basis of the company's failure to inform Barone that her obligations had changed. Barone relied, to her substantial detriment, on the Society's failure to alert her that she was not entitled to FLA or company provided leave for the time period specified in her letter. Defendant is estopped from now asserting a legal position contrary to the one its inaction led the plaintiff to believe was applicable to her situation.

## V.

For the reasons set forth herein, this Court finds that Barone's termination violated her FLA rights but did not result in a breach of any contractual relationship with defendant. Barone's contract claims lack merit because, as an employee at-will, she was subject to termination with or without cause.

From January 26, 1996, through July 26, 1996, Barone's 130 day absence was protected by the Society's paid leave policy. Because the Society did not elect to designate any of plaintiff's absence as FLA leave, this time period may not be retroactively credited against Barone's FLA entitlement. This Court finds that Barone provided the Society with sufficient notice of her husband's illness and her need for FLA leave. From July 26, 1996, through August 9, 1996, Barone was protected by the FLA because she was caring for her terminally ill husband. From August 9, 1996, the day of her husband's death, through August 19, 1996, Barone was no longer protected by the FLA but was protected by the Society's bereavement policy. After August 19, 1996, Barone was no longer protected by her employer's policy and her predicate for leave under the FLA no longer existed.

When plaintiff indicated a desire to return to work, the Society was obligated to advise her when she had to report for work to preserve her right to reinstatement under the FLA. Because the Society failed to notify Barone of her responsibilities under the statute and the consequences of her failure to meet her FLA obligations, this Court finds that defendant violated the notice provisions of the FLA.

In addition, the Society is equitably estopped from exercising its otherwise available right to terminate Barone's employment. Barone relied to her detriment on the Society's conduct, namely its failure to inform her that her leave did not extend beyond August 19, 1996, and the Society is now equitably estopped from denying that her FLA right to reinstatement extended until September 4, 1996, the date of her intended return to work.

An appropriate order in conformance with this opinion will be entered on even date herewith.