**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1250-22

ALAN S. DILLON,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
STATE OF NEW JERSEY
DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
DAN KENNEDY, MAGDALENA
PADILLA, KAREN FELL,
SANDRA KRIETZMAN, JASON
STRAPP, YVONNE HERNANDEZ,
LINDA DOUGHTY, MATTHEW R.
WILSON, NICK DIMARTINO,
KELLEY CUSHMAN, LERONDA
AVILES, and STEVE DOUGHTY,

     Defendants-Respondents.

_____

Argued September 10, 2024 – Decided October 9, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0432-17.

Donald F. Burke argued the cause for appellant (Law Office of Donald F. Burke, attorneys; Donald F. Burke and Donald F. Burke, Jr., on the briefs).

William P. Flahive argued the cause for respondents (Flahive Mueller Attorneys at Law, LLC, attorneys; William P. Flahive, on the brief).

PER CURIAM

In this employment discrimination action, plaintiff Alan Dillon appeals from the Law Division's November 10, 2022 order,[1] which granted summary judgment in favor of defendant employers the State of New Jersey (State) and the State of New Jersey Department of Environmental Protection (DEP) and several defendant employees. The trial court dismissed with prejudice Dillon's complaint alleging Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, and New Jersey Constitution claims. We affirm.

---

[1] We note Dillon's merits brief lists eight trial court orders appealed from but only raises arguments regarding the court's November 10, 2022 order. R. 2:6-2(a)(2)(A). Therefore, we limit our discussion to the arguments raised by Dillon on appeal as issues not briefed are deemed waived. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024); In re Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 180 (App. Div. 2021), certif. denied, 251 N.J. 380 (2022).

A-1250-22

I.

We view the following facts established in the summary judgment record in the light most favorable to plaintiff, the non-moving party. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023). In January 1986, Dillon began working for the DEP as an environmental engineer trainee. After working for the DEP for thirty years and becoming a section chief in the Bureau of Safe Drinking Water (Bureau), Division of Water Supply and Geoscience (Division), he retired in May 2016.

In the Bureau, Dillon reported directly to defendant Sandra Krietzman, the Bureau Chief. Defendant Karen Fell, the Assistant Director of Water System Operations, supervised both Dillon and Krietzman.

In May 2012, Dillon advised Division Director Fred Sickels that Fell was "standing in [his] personal space" when she confronted him about his job performance, which he found was "improper personal harassment." Dillon later filed a "workplace violence" complaint against Fell, which alleged neither age nor gender discrimination. Dillon had known Fell for approximately thirty years, based on his long-term friendship with her husband, they had been friends, and Dillon was the best man at her wedding. After an investigation, the DEP's Office of Labor Relations (OLR) determined Fell's behavior was

inappropriate, "created a hostile environment," and was unbecoming of a public employee, but concluded the incident did "not [to] rise to the level of workplace violence." Fell received a written warning on October 18, 2012.

In 2013, during a meeting attended by Krietzman and Bureau Chief Zalaskus,[2] Fell allegedly called Dillon "too old" to attend a 2014 conference. Dillon recalls reporting the incident to Sickels, but the matter was not referred as an Equal Employment Opportunity (EEO) complaint. Sickels did not recall Dillon reporting the incident.

On November 17, 2014, Dillon reported alleged discrimination to a DEP human resources assistant. He believed the allegations were forwarded to the Director of the DEP's Office of Equal Opportunity and Public Contract Assistance (OEO), and defendant Jason Strapp, an administrator in the OLR. At the time, Strapp and defendant Yvonne Hernandez, a personal assistant in the OLR, handled such complaints. The record does not evince Dillon filed a written complaint, but Strapp received an email from human resources stating Dillon "raised claims of discrimination based on age and retaliation for filing a previous claim" against Fell.

---

[2] We use only last names when a person is initially mentioned because first names were not included in the record.

A-1250-22

In addition to working at the DEP, Dillon served as a course coordinator for the Rutgers University Safe Drinking Water Update (Rutgers Update). He created presentation topics and lectured on safe drinking water. In December 2014, Dillon provided his DEP supervisors with the announced conference topics for January and February of 2015, which included open air reservoirs and fracking. Dillon was a scheduled presenter. The DEP required employees to seek approval "prior to accepting requests to make presentations." Fell questioned the relevance of Dillon's proposed topics to New Jersey water systems, advising they were "sensitive" and not "politically acceptable." Sickels similarly disapproved of the topics.

Contesting Fell's opinion that the topics were "political in nature," Dillon emailed Krietzman on December 17, 2014 that "[he] should be protected from retribution for voicing concerns about considering political factors when developing an agenda," and it was "the first time [he] ha[d] ever encountered such a problem." Because Dillon failed to offer alternative speakers and topics, Krietzman submitted alternatives, and Dillon "disinvited" the original speakers.

On February 3, 2015, after Dillon's January presentation, Fell and Sickels filed a request for disciplinary action against Dillon for addressing the cancelled presentations with the audience and relaying that his Division "managers" had

5

decided the topics "[we]re too sensitive." Dillon told the audience "[he] always knew [he] might be censored for the F word, [but he] just didn't think it would be fracking!" The Rutgers Update registration identified Dillon as a DEP section chief.

One week later, Dillon filed an EEO complaint with the OEO alleging retaliation by Krietzman and Fell based on gender and age discrimination. He alleged the discrimination occurred in January and February 2015, referencing "continuous" incidents. Strapp also handled this complaint. Dillon maintains he was unaware a disciplinary action had already been filed against him.

In April 2015, the OEO found Dillon's 2015 claims of gender and age discrimination unsubstantiated. After conducting interviews, the OEO Director determined Dillon's allegations of "derogatory age and gender-related comments" were uncorroborated. Specifically, the OEO Director found: Sickels did not recall Dillon "ever reporting any allegations [of discrimination] to him"; Dillon's representation that Fell's "hostile behavior [wa]s recognized . . . by coworkers" was uncorroborated; and the "male witnesses [interviewed] did not feel like they were treated less favorably by Fell because of their gender." The investigation determined the DEP "Presentation Approval Process was circulated to staff" by email in October 2013. Further, Dillon's

6

allegations against Fell and Krietzman regarding: a "travel [decision regarding] . . . the [Council of Environmental Infrastructure Authorities] conference; removal of [Dillon's] abstract from the [March 2015] American Water Works Association (AWWA) conference; and the substitution of the fracking and reservoir topics from the Rutgers [Update]," "were actually [decisions] made by . . . Sickels."

Thereafter, defendant Magdalena Padilla, the OEO's Chief of Staff, determined the investigation into Dillon's claims did not "substantiate [his] allegations" of "a hostile work environment on the basis of age and gender discrimination." Padilla noted Dillon was approximately sixty-two-years-old, and Sickels was "a similarly situated male in his 60s." Padilla's report found evidence of "animosity between [Dillon] and . . . Fell" resulting from "personality conflicts and management styles," not gender or age discrimination.

In June 2015, Dillon received a written warning from Krietzman that his Rutgers Update actions constituted insubordination and conduct unbecoming of a public employee. Dillon declined to sign a receipt acknowledging the written warning. The warning advised he had failed to follow instructions to replace the Rutgers Update conference topics and made disparaging remarks as a recognized DEP employee.

7

On November 18, Dillon allegedly filed another EEO complaint, claiming Fell retaliated against him by denying his March 2016 AWWA convention speaking request because he had again failed to receive approval prior to submitting a course abstract per DEP protocol. Dillon disagreed with the decision and emailed Fell, Krietzman, and Sickels on May 5, 2015, stating he: was not presenting in his "official capacity," had previously received ethics approval to teach, and was "unaware of the policy" requiring speaking approval. Dillon referenced a 2008 DEP Office of Legal Affairs approval permitting him to serve as a self-employed environmental trainer "on sanitary inspections of public water systems for states such as Washington and California."

On November 24, 2015, Fell initiated another disciplinary action against Dillon for planning to present at the 2016 AWWA conference without obtaining prior approval in violation of the long-standing DEP policy. Defendant Dan Kennedy was speaking at the conference as the DEP's assistant commissioner. Dillon had allegedly submitted an abstract form to the AWWA, which included his title as a "[s]ection [c]hief," and an Ethics Disclosure Form Outside Activity Questionnaire stating he was self-employed. He maintained obtaining permission was premature because the AWWA proposed abstract was not solidified. Strapp served Dillon with a Preliminary Notice of Disciplinary

A-1250-22

Action (PNDA), dated December 18, 2015, seeking a two-day suspension for "insubordination and conduct unbecoming a state worker" for his actions related to the AWWA conference, which Dillon appealed.

On January 29, 2016, a DEP Division of Human Resources hearing officer held a disciplinary hearing. Krietzman, Fell, and Dillon testified. The hearing officer issued an eight-page decision sustaining the charges of insubordination and conduct unbecoming of a government employee against Dillon, and the two-day suspension without pay was appropriate. After receiving the Final Notice of Disciplinary Action, issuing a two-day suspension without pay, Dillon appealed. On October 25, 2017, the Joint Union Management Panel[3] adopted the hearing officer's findings of insubordination and conduct unbecoming of a government employee but modified the suspension to "a one[-]day suspension."

On April 12, 2016, Dillon was issued another PNDA charging "conduct unbecoming [of] a public employee," N.J.A.C. 4A:2-2.3(a)(6), and falsification

---

[3] The Joint Union Management Panel "reviews . . . appeals filed by employees who are represented by a union." About Us, Civ. Serv. Comm'n, https://www.nj.gov/csc/about/about/terminology/definitions.html (last visited Sept. 16, 2024). It "consists of an individual selected by the appointing authority (employing agency), one individual selected by the [U]nion, and one neutral individual who is selected by both the appointing authority and the [U]nion." Ibid.

as other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12), and recommending a five-day suspension. Strapp and Hernandez issued the notice alleging Dillon was "observed by coworkers in" defendant Linda Doughty's[4] "cubical under her desk with her computer monitor sideways on two separate occasions." Defendants Kelly Cushman and Leronda Aviles gave written statements against Dillon. Dillon denied the desk tampering and allegedly "provided false statements as well as a false report." The PNDA provided Dillon "failed to cooperate with [the] OLR in violation of DEP Policy 2.35." The disciplinary charges were dismissed following Dillon's retirement.

In March 2016, after Dillon announced his retirement, his coworkers created and posted derogatory flyers around the DEP workplace. The flyers alleged Dillon: was retiring to avoid pension sanctions, and coworkers should celebrate his departure; had disreputable behavior, alienated colleagues, and was abusive; talked endlessly at meetings; hit coworkers as they walked down the hallway; was witnessed under Doughty's desk; and "made light of the perception that [he] wore his pants low to his hips." In July 2016, a DEP Investigator found

---

[4] We refer to Linda Doughty throughout this opinion by her surname and Steve Doughty by his full name.

circumstantial evidence defendants Matthew R. Wilson and Nick DiMartino created the flyers.

In 2019, after Dillon retired, Doughty reported an encounter with him at the DEP office. Dillon was precluded from entering the office unescorted, though his spouse still worked at the DEP. After retiring from the DEP, Dillon worked for the State of Hawaii, Department of Health.

On December 5, 2018, Dillon filed a second amended nine-count complaint alleging claims against all defendants for: LAD age and gender discrimination; LAD conspiracy; New Jersey Constitution, Article I, Paragraph 6, and CRA freedom of speech violations; New Jersey Constitution and CRA substantive equal protection violations; New Jersey Constitution, Article 1, Paragraph 1, and CRA substantive due process violations; CRA conspiracy; equitable relief; and punitive damages. The complaint also alleged LAD retaliation and aiding and abetting against Kennedy, Padilla, Fell, Krietzman, Strapp, Hernandez, Doughty, Wilson, DiMartino, Cushman, and Aviles.

On August 29, 2019, the State, the DEP, Kennedy, Padilla, Fell, Krietzman, Strapp, and Hernandez filed an answer to the second amended complaint. The same day, Steve Doughty, Cushman, Aviles, DiMartino, Wilson, and Doughty filed a motion to dismiss in lieu of an answer. On October

11

11, the court entered an order granting dismissal of the second amended complaint against Steve Doughty and granting dismissal of the aiding and abetting as well as freedom of speech constitutional violation counts against Cushman, Aviles, DiMartino, Wilson, and Doughty.[5]  On October 23, Cushman, Aviles, DiMartino, Wilson, and Doughty filed an answer.  Thereafter, the court entered orders appointing a retired judge to mediate discovery disputes, requiring payment of the mediator's fees and scheduling a hearing to address the amount of the mediator's fees.

On July 29, 2022, the State, the DEP, Kennedy, Padilla, Fell, Krietzman, Strapp, Hernandez, Doughty, Wilson, DiMartino, Cushman, and Aviles moved for summary judgment.  On September 27, Dillon cross-moved for summary judgment.  On October 19, Dillon moved to require defendants to substantively respond to select statements of material facts included in his cross-motion or, alternatively, to consider those paragraphs unopposed under Rule 4:46-2(b).

---

[5] We note the court's October 11, 2019 order was without prejudice.  On appeal, Dillon has not substantively challenged these dismissals, which are deemed waived.  See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024); In re Gloria T. Mann Revocable Tr., 468 N.J. Super. at 180.  Further, Dillon's case information statement filed pursuant to Rule 2:5-1(3) indicates the appeal is as of right.  See R. 2:2-3(a).  We therefore deem the court's October order modified to reflect a dismissal with prejudice.  See Morris Cnty. v. 8 Ct. St. Ltd., 223 N.J. Super. 35, 38-39 (App. Div. 1988) (holding that a dismissal without prejudice may operate as a final judgment).

On November 10, 2022, the court issued an oral decision accompanied by three orders, which granted all remaining defendants summary judgment, denied Dillon's cross-motion for summary judgment, and denied Dillon's motion seeking a more responsive statement of material facts, respectively. Relying on the evidence set forth in the summary judgment record and "giving all favorable inferences to [Dillon]," the court found it was "clear . . . that the defendant[s'] motion is granted in its totality." The court dismissed the claims as to all defendants because Dillon failed to establish a prima facie case of LAD age or gender discrimination, LAD retaliation, and CRA and constitutional violations.[6]

On appeal, Dillon argues the court erred by failing to: (1) apply the correct legal standard; (2) view the evidence in the light most favorable to him, instead erroneously making credibility findings in favor of defendants; (3) correctly analyze causation; (4) find material issues of fact demonstrating the individual defendants discriminated and retaliated by aiding and abetting; (5) find he established a pattern of discriminatory and retaliatory acts that cumulatively constitute a hostile and discriminatory environment; and (6) permit his

_____

[6] On appeal, Dillon does not challenge dismissal of his conspiracy, equitable relief, and punitive damages claims. Thus, defendant has waived those arguments. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (finding "[a]n issue not briefed on appeal is deemed" abandoned).

constitutional claims alleging unconstitutional governmental interference with his speech and retaliation for filing a lawsuit.

## II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Our review entails determining "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." C.V. ex rel C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)).

"Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). A court should grant summary judgment, "in particular, 'after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment. Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019).

### A. LAD gender and age discrimination

The LAD's remedial "purpose is nothing less than the eradication of the cancer of discrimination." C.V., 255 N.J. at 306-07 (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993)) (internal quotation marks omitted). It prohibits unlawful employment practices and discrimination "based on race, religion, sex, or other protected status[] that creates a hostile work environment." Cutler v. Dorn, 196 N.J. 419, 430 (2008); see also N.J.S.A. 10:5-12(a). "Without doubt, the LAD 'unequivocally expresses a legislative intent to prohibit discrimination in all aspects of the employment relationship, including hiring and firing, compensation, the terms and conditions of employment, and retirement.'" Schiavo v. Marina Dist. Dev. Co., LLC, 442 N.J.

Super. 346, 367 (App. Div. 2015) (quoting Alexander v. Seton Hall Univ., 204 N.J. 219, 227-28 (2010)).

In bringing a discrimination claim, a plaintiff must first show that he or she belongs to a protected class as provided for in the statute. See Rivera v. Trump Plaza Hotel & Casino, 305 N.J. Super. 596, 604 (App. Div. 1997). Where a plaintiff does not belong to a protected class, he or she must demonstrate another form of discrimination recognized under the LAD. For example, to prevail in a so-called "reverse" discrimination claim, a plaintiff must show that the defendant is the "unusual employer who discriminates against the majority." Ibid. (quoting Erickson v. Marsh & McLennan Co., 117 N.J. 539, 551-52 (1990)).

The elements necessary to state a prima facie LAD hostile work environment claim are: "(1) that plaintiff is in a protected class; (2) that plaintiff was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." Victor v. State, 203 N.J. 383, 409 (2010) (citing Lehmann, 132 N.J. at 603-04). It is well-established an employer may be "liable if [a] supervisor's conduct creates a hostile work environment." Gaines v. Bellino, 173 N.J. 301, 312 (2002) (citing Lehmann, 132 N.J. at 619).

A-1250-22

To address the difficulty of proving discriminatory intent, our Supreme Court has adopted the "burden-shifting methodology" set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Meade v. Township of Livingston, 249 N.J. 310, 328 (2021). Under this burden-shifting analysis:

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant must then show a legitimate nondiscriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.
>
> [Ibid. (quoting Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 331 (2010)).]

"Establishment of a prima facie case gives rise to a presumption that the employer unlawfully discriminated against the employee." Id. at 329 (quoting Bergen Com. Bank v. Sisler, 157 N.J. 188, 210 (1999)). "The employer may obliterate that presumption 'with admissible evidence of a legitimate, non-discriminatory reason' for taking the employment action at issue." Garnes v. Passaic Cnty., 437 N.J. Super. 520, 537 (App. Div. 2014) (quoting Bergen Com. Bank, 157 N.J. at 210). "The employer only carries the burden of production," not the burden of persuasion. Greenberg v. Camden Cnty. Vocational & Tech. Sch., 310 N.J. Super. 189, 199 (App. Div. 1998). "At that point, the employee has an opportunity to prove that the employer's asserted reason for the action is

17

not true and is merely a pretext for discriminating among employees on an impermissible basis." Garnes, 437 N.J. Super. at 537.

We first address Dillon's contention that the court erroneously granted summary judgment on his age and gender discrimination based hostile work environment claims because the court did not view the facts in the light most favorable to him as the non-moving party.  Dillon maintains material issues of fact exist because:  Fell hostilely confronted him about his job performance; Fell stated at a meeting he was "too old" to present; Krietzman inquired about his retirement plans; male coworkers corroborated that "a lot of women" were promoted; he suffered retaliatory discipline regarding his work performance; and coworkers distributed derogatory flyers about him.  He argues each incident alone sufficiently supports discrimination, and "the cumulative effect of the various incidents" demonstrates a hostile work environment.  We disagree.

We begin by recognizing the well-established principle that "a single incident of invidious harassment can create a hostile work environment." Taylor v. Metzger, 152 N.J. 490, 499 (1998); see also El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 179 (App. Div. 2005) ("A single comment, if sufficiently severe, may be enough to create a hostile working environment."). Further, alleged acts of discrimination viewed cumulatively may be sufficient to

present a hostile work environment claim to a jury. See Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 18 (2002). We note, "[t]he continuing violation doctrine provides an exception to [the LAD] . . . limitations period" for consideration of a claim. Ibid. Therefore, we address each incident alleged by Dillon in turn.

Dillon argues his substantiated 2012 complaint against Fell demonstrates a hostile work environment, but he did not raise age or gender discrimination concerns in the investigation of Fell's conduct. After the investigation, the OLR determined Fell's conduct was unbecoming of a public employee and had created a hostile environment, but it did not "rise to the level of workplace violence." Thus, while Fell's aggressive criticism was inappropriate, Dillon had not reported, nor did the investigation determine, that Fell's actions were based on discrimination.

Regarding Fell's alleged 2013 age-related statement that he was "too old" to be a conference presenter, Dillon maintains the comment creates a question of fact regarding age discrimination. The record yields Dillon did not avail himself of the opportunity to file an EEO complaint and Sickels had no recollection of receiving any claim. We note Dillon and Fell were contemporaries, she had worked at the DEP a year longer than Dillon, they had

19

known each other for approximately thirty years, and he was the best man at her wedding. Fell was about fifty-six years old when she made the comment, and Dillon was approximately sixty years old. The record demonstrates that, after the alleged comment, Dillon was approved to attend conferences in 2014 and 2015 as he continued to serve as a course coordinator for the Rutgers Update. Viewing the facts in the light most favorable to Dillon, Fell's alleged age-related statement, does not establish a prima facie showing of age discrimination.

We also reject Dillon's contention that an aged-based discrimination material issue of fact exists because Krietzman inquired about his 2015 retirement plans. Viewing the allegation in context, Dillon had repeatedly submitted applications for retirement in 2008, 2009, 2011, 2012, 2013, and 2014. Further, it is undisputed Krietzman at the time was "losing several employees to retirement." Considering the unrefuted facts, Krietzman asking Dillon about retirement does not establish a prima facie showing of age discrimination.

Dillon's argument that a genuine issue of fact exists because his coworkers corroborated gender discrimination is also without merit. He references Bureau employee Paul Smith's statement that there "appears to be a bias" in the Bureau. Dillon fails, however, to acknowledge Smith's bias comment related to "who . . .

20

receive[d] assistance to obtain a promotion." Smith relayed he was denied a promotional title, and he unsuccessfully appealed. Smith also stated a lot of women were promoted, but he "did not witness any comments made by Krietzman or Fell to Dillon regarding his age, gender, or his need to retire." We note Dillon has not made a failure to promote claim.

Dillon also contends Division employee Nasir Butt asserted the DEP often gave promotional opportunities to young women. Reviewing the comment in context, Butt opined his lack of advancement was "more [likely due] to his non-aggressive nature." Butt "did not witness any comments made by Krietzman or Fell to Dillon regarding his age, gender or his need to retire." He described Dillon and Fell as "aggressive." The record does not support Dillon's contention that his coworkers corroborated age or gender discrimination against him.

We are unpersuaded by Dillon's contention that it is factually relevant to his gender discrimination claims that his supervisors Fell and Krietzman are women who took disciplinary measures against him. The adverse employment actions taken by Fell and Krietzman occurred under Sickel's oversight—a similarly aged male. Further, we note Dillon provided no material issues of fact to support that any individual defendant involved with his disciplinary employment actions committed age or gender discrimination.

21

It bears noting that Dillon claims to have filed other EEO complaints, but the record does not corroborate his assertion. Undocumented claims are not competent, reliable evidence sufficient to defeat a summary judgment motion when a court reviews the totality of the evidence in the record. See Globe Motor Co., 225 N.J. at 479-80 (noting "the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists'" to defeat summary judgment (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957))).

We next address Dillon's assertion that the adverse employment actions demonstrate age and gender discrimination. Accepting all inferences in Dillon's favor regarding the alleged disciplinary actions taken against him, derogatory flyers distributed, and the investigation into his tampering with a co-worker's computer—he has failed to demonstrate a material fact supporting the adverse employment actions are related to his age or gender.

In considering whether Dillon's alleged gender and age specific incidents and adverse employment actions cumulatively demonstrate a hostile work environment, we are guided by our Supreme Court's direction that "courts must consider the cumulative effect of the various incidents, bearing in mind 'that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created may exceed

the sum of the individual episodes.'" Lehmann, 132 N.J. at 607 (quoting Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992)). We observe "a hostile work environment discrimination claim cannot be established by . . . comments which are 'merely offensive.'" Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 73 (App. Div. 2004) (quoting Heitzman v. Monmouth Cnty., 321 N.J. Super. 133, 147 (App. Div. 1999)). Further, employees are "not entitled to a perfect workplace, free of annoyances and colleagues [they find] disagreeable." Herman v. Coastal Corp., 348 N.J. Super. 1, 23 (App. Div. 2002) (quoting Lynch v. New Deal Delivery Serv. Inc., 974 F. Supp. 441, 452 (D.N.J. 1997)).

We conclude Dillon has failed to make a prima facie showing of "'severe or pervasive' conduct . . . that would 'make a reasonable [person] believe that the conditions of employment are altered and [that the] working environment is hostile.'" Cutler, 196 N.J. at 431 (alterations in original) (quoting Lehmann, 132 N.J. at 604). Viewing the cumulative conduct and providing all favorable inferences, Dillon has not shown conduct which would make a reasonable male in his sixties believe the employment conditions created a hostile work environment. Thus, we discern no reason to disturb the court's order granting summary judgment and dismissing his gender and age discrimination related

23

claims against defendants because the record is void of sufficient competent facts supporting a hostile work environment.

Having discerned Dillon has failed to make a cumulative prima facie showing of a hostile work environment, we only add the following comments regarding the McDonnell burden-shifting analysis. Even if Dillon had demonstrated a prima facie case of gender and age discrimination, defendants have offered legitimate, non-discriminatory reasons for the disciplinary actions taken against Dillon. See Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005). As found by the court, defendants "met their burden[,] . . . providing legitimate reason[s] for the disciplinary actions."

Conversely, Dillon has failed to meet his burden of showing, by a preponderance of the evidence, that the purported legitimate reasons for the disciplinary actions taken, which included the Rutgers Update presentation, AWWA abstract, and investigation surrounding his tampering with a coworker's desk, were pretexts for age or gender discrimination. See Schiavo, 442 N.J. Super. at 368-69.

"To prove pretext, . . . a plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent." Viscik v. Fowler Equip. Co., 173 N.J.

24

1, 14 (2002). The plaintiff need not provide direct evidence but "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999) (alteration in original) (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)). Dillon has not credibly rebutted the proffered reasons were pretext; thus, we discern no basis to disturb the judge's dismissal of Dillon's discrimination claims.

## B. LAD retaliation

The LAD prohibits retaliation, making it an unlawful employment practice to "take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has . . . filed a complaint, testified[,] or assisted in any proceeding under this act." N.J.S.A. 10:5-12(d). To prove a retaliation claim, a plaintiff must establish: (1) he or she engaged in a protected activity known to the employer, such as making a good faith complaint of unlawful discrimination; (2) an adverse employment action; and (3) causation. Battaglia v. United Parcel Servs., Inc., 214 N.J. 518,

547 (2013); see also Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 373 (2007) (requiring a plaintiff who "alleges retaliation under the LAD" to prove "his or her . . . complaint . . . was made reasonably and in good faith"). It is clear the LAD prohibits employer retaliation against an employee complaining of unlawful discrimination, and the court may "decide[], as a matter of law, whether or not a plaintiff has carried his or her burden of demonstrating the elements of the prima facie case." Tartaglia v. UBS/PaineWebber, Inc., 197 N.J. 81, 125 (2008).

In Roa v. Roa, our Supreme Court considered retaliatory adverse employment actions and "how harmful an act of retaliatory discrimination must be" to be actionable under the LAD. 200 N.J. 555, 575 (2010). The Court adopted the United States Supreme Court's Title VII retaliation standard established in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Ibid. Our Court elucidated the reviewing framework regarding the employer's adverse action is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Ibid. (internal quotations marks omitted) (quoting Burlington, 548 U.S. at 68). Our Court acknowledged the retaliation statutes do

not protect plaintiffs from "those petty slights or minor annoyances that often take place at work and that all employees experience." Ibid. (quoting Burlington, 548 U.S. at 68).

In reviewing causation, "the mere fact that [an] adverse employment action occurs after [the protected activity]" generally will not "satisfy the plaintiff's burden of demonstrating a causal link between the two." Young v. Hobart W. Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) (alterations in original) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). "Only where the facts of the particular case are so 'unusually suggestive of retaliatory motive' may temporal proximity, on its own, support an inference of causation." Ibid. (quoting Krouse, 126 F.3d at 503). "Jurors may infer a causal connection [between a protected activity and an adverse employment action] based on the surrounding circumstances." Est. of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000).

Our Supreme Court has held "[a]ll LAD claims are evaluated in accordance with the United States Supreme Court's burden-shifting mechanism." Battaglia, 214 N.J. at 546. "Once [the] plaintiff establishes a prima facie case of retaliation, the defendant must 'articulate a legitimate, non-retaliatory reason for the [adverse] decision.'" Hobart, 385 N.J. Super. at 465

(quoting Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 549 (App. Div. 1995)).  If the defendant provides a legitimate reason, the plaintiff must demonstrate a discriminatory motive and show that the employer's stated reason was merely a pretext for discrimination.  Ibid.; Romano, 284 N.J. Super. at 549.

Dillon contends he suffered retaliation "because he . . . complain[ed] that he was the subject of age and sex discrimination" and "each defendant played a role in aiding and abetting the retaliation against him."  We agree the record establishes Dillon engaged in a protected activity by reporting perceived acts of harassment and discrimination by his superiors and coworkers.  Dillon reported: workplace aggression in May 2012 to Sickels, retaliation in December 2014 to Krietzman, and EEO discrimination claims in February and November 2015. See Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 275 (App. Div.1996) (determining that plaintiff "clearly engaged in protected activity" under the LAD when she filed a charge with the EEO).  Dillon has made a prima facie showing that he believed in good faith there was a "reasonable basis for complaining about the workplace behavior."  See Tartaglia, 197 N.J. at 125.

We next address together Dillon's contentions that the court applied the incorrect legal standard governing LAD retaliation and failed to view the facts

in the light most favorable to him as the non-moving party. The court comprehensively viewed the facts in a light most favorable to Dillon, while correctly undertaking an analysis under the three retaliation elements elucidated in Woods-Pirozzi, 290 N.J. Super. at 274. While Dillon accurately contends the court did not recite our Supreme Court's holding in Roa, the motion court did observe that an adverse employment action is widely construed to include altering an employee's "conditions" or "otherwise hav[ing] a material adverse effect" and, ultimately, determined that Dillon established "[he] suffer[ed] disciplinary action[s]." See Prager v. Joyce Honda, Inc., 447 N.J. Super. 124, 140-41 (App. Div. 2016) (recognizing subjectively distressing actions are legally insignificant in trying to prove alleged retaliation caused tangible injury or harm).

When viewing the court's recitation of the law as a whole, we discern no error. The court noted Dillon's burden was to establish a prima facie showing of retaliation by demonstrating that: "he was engaged in protected activity known to the defendant, he was subject to an adverse employment action by the defendant, and . . . of course the third factor, the causal link between the two." See Woods-Pirozzi, 290 N.J. Super. at 274. The court copiously addressed

Dillon's individual retaliation claims against Fell, Krietzman, Padilla, Strapp, Hernandez, Kennedy, the DEP and the State.

The court considered Dillon's protected activities and deliberately evaluated each of Dillon's adverse employment actions as specifically alleged against each defendant. Dillon established "[he] suffer[ed] disciplinary action[s]," but the court correctly recognized the actions were only known by and undertaken by certain defendants. Ultimately, Dillon has not established competent facts supporting a causal link to his retaliation claims. Specifically, while Dillon has shown certain defendants took adverse disciplinary actions, he has failed to show a sufficient causal relationship between his protected activities and an adverse employment action. Because the court squarely addressed the claims against each defendant in view of the governing law, and we concur that he failed to make a prima facie showing against each defendant under the elements of discriminatory retaliation, we need not recite each allegation here. We add only the following comments.

Regarding the warning Dillon received after Fell and Sickels filed a request for discipline based on his Rutgers Update remarks, he does not dispute the essence of the concerning remarks but maintains they were not "disparaging." Dillon has failed to show a genuine material fact supporting the

adverse discipline taken by Fell, Kreitzman, Strapp, Kennedy, Padilla, and Hernandez for his presentation remarks was causally related to his earlier protected activity. Similarly, while Dillon argues that his suspension for not obtaining AWWA presentation approval was retaliation by Fell, Kreitzman, Strapp, Kennedy, Padilla, and Hernandez, he does not credibly refute having received the DEP policy requiring permission. Nor does he refute he submitted the abstract as a section chief and the 2008 DEP Office of Legal Affairs approval did not include New Jersey speaking engagements. Again, the record yields no credible nexus supporting the adverse employment actions taken were in retaliation for Dillon's protected activities.

Turning to Dillon's retaliation contentions against the DEP and the State, we again discern no reason to disturb the court's order dismissing the claims based on vicarious liability. We reject Dillon's argument that the DEP treated him adversely and mishandled the investigation into the incident involving Doughty's desk, as his argument is unsupported by a liberal review of the record in his favor, and he ultimately received no discipline. Dillon has failed to establish facts demonstrating his protected complaints were causally related to the desk investigation and discipline recommendations. See Hobart, 385 N.J. Super. at 467 ("Where the timing alone is not 'unusually suggestive,' the plaintiff

31

must set forth other evidence to establish the causal link."); Nardello v. Township of Voorhees, 377 N.J. Super. 428, 434 (App. Div. 2005) ("[N]ot every employment action that makes an employee unhappy constitutes 'an actionable adverse action.'" (quoting Cokus v. Bristol Myers Squibb Co., 362 N.J. Super. 366, 378 (Law Div. 2002), aff'd, 362 N.J. Super. 245 (App. Div. 2003))). "The LAD was and is intended as a shield to protect employees from the wrongful acts of their employers, and not as a sword to be wielded by a savvy employee against his employer." Carmona, 189 N.J. at 373. Dillon's blanket claims that the DEP and the State did not follow procedures for internal complaints, did not interview witnesses, and ignored corroborating evidence are belied by the record.

## C. Aiding and abetting

N.J.S.A. 10:5-12(a) prohibits unlawful discrimination only by an "employer." An individual employee or supervisor is not considered an employer under the LAD definitions. See Tarr v. Ciasulli, 181 N.J. 70, 83 (2004). However, N.J.S.A. 10:5-12(e) makes "[i]t . . . unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden [under the LAD],' and such conduct may result in personal liability." Ibid. (second and fourth

alterations in original) (citation omitted) (quoting N.J.S.A. 10:5-12(e)).  An

employee may be liable as an aider or abettor if a plaintiff establishes that:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.
>
> [Id. at 84 (alteration in original) (quoting Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).]

Aiding and abetting liability "focuses on whether a defendant knowingly

gave 'substantial assistance' to someone engaged in wrongful conduct, not on

whether the defendant agreed to join the wrongful conduct."  Podias v. Mairs,

394 N.J. Super. 338, 353 (App. Div. 2007).  Assessing whether a defendant

"substantially assist[s]" the principal violator requires a court to balance five

factors:  "(1) the nature of the act encouraged, (2) the amount of assistance given

by the supervisor, (3) whether the supervisor was present at the time of the

asserted harassment, (4) the supervisor's relations to the others, and (5) the state

of mind of the supervisor."  Tarr, 181 N.J. at 84 (citing Restatement (Second) of

Torts § 876(b) cmt. d (Am. L. Inst. 1979)); Hurley, 174 F.3d at 127 n.27.  Aiding

and abetting liability requires "active and purposeful conduct."  Tarr, 181 N.J.

at 83.

Dillon's claims alleging aiding and abetting regarding gender and age discrimination against Fell, Krietzman, Strapp, Kennedy, Padilla, Hernandez, DiMartino, Wilson, Cushman, Aviles, and Doughty and retaliation against Fell, Krietzman, Strapp, Kennedy, Padilla, and Hernandez fail because he has not established facts supporting a prima facie showing of a wrongful act. While he asserts these defendants provided substantial assistance or encouraged each other, there are no material facts supporting an act or cumulative acts of gender or age discrimination or retaliation. Stated differently, Dillon has not shown a sufficient material fact that any defendant's active and purposeful conduct aided in the commission of an act of discrimination or retaliation. We discern no reason to disturb the court's order granting summary judgment on all of Dillon's aiding and abetting related claims.

### D. Constitutional claim

The United States Constitution and New Jersey Constitution provide protections against governmental interference with citizens' speech. U.S. Const. amend. I; N.J. Const. art. I, ¶ 6. There are, however, recognized limitations on public employees' constitutional freedom of speech rights. Courts are to undertake a two-fold balancing test analysis, as articulated in Pickering v. Bd. of Educ., 391 U.S. 563 (1968). A court must determine whether the employee's

34

speech may be "fairly characterized as constituting speech on a matter of public concern" and whether they are speaking as a citizen rather than a public employee. Connick v. Wyers, 461 U.S. 138, 146 (1983); see also Karins v. City of Atl. City, 152 N.J. 532, 549 (1998). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight . . . in the name of the First Amendment." Connick, 461 U.S. at 146. Additionally, when a public employee makes a statement in their official capacity as a public employee, they are not speaking as a "citizen[]" and, therefore, "the Constitution does not insulate their communications from employer discipline." De Ritis v. McGarrigle, 861 F.3d 444, 453 (3d Cir. 2017) (quoting Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)).

Dillon contends reversal is warranted under the Pickering balancing test because supervisors unduly restricted his speech regarding the Rutgers Update topics and his comments to the audience on the topics. He highlights the reprimands for his actions. We note Dillon was identified as a DEP Bureau section chief for each speaking engagement. The Bureau recognized and supported him as a Rutgers Update course coordinator for multiple years. Since

he was speaking in his recognized role as a public employee of the DEP, and not as a private citizen, the full protections under the First Amendment of the Constitution are not afforded.

We also conclude there is no merit to Dillon's claim that his speech was restricted because he was prevented from speaking at the AWWA Conference. Dillon was prevented from speaking, not because of the content of his speech, but because he failed to obtain prior approval pursuant to a long-standing DEP policy. He has presented no competent facts rebutting the DEP presentation approval policy existed, he had received the policy, and he had failed to comply. The record yields no material facts supporting any defendant infringed on Dillon's First Amendment rights. Therefore, the court correctly dismissed Dillon's claims alleging CRA and constitutional freedom of speech violations.

To the extent that we have not addressed plaintiff's remaining contentions, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1250-22